UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KEVIN C. CAMPBELL,

                    Petitioner,

                                                    CASE NO. 5:06-CV-10433
        v.                                          JUDGE JOHN CORBETT O'MEARA
                                                    MAGISTRATE JUDGE PAUL J. KOMIVES

LINDA M. METRISH,

                    Respondent.[1]

_____/


## REPORT AND RECOMMENDATION


*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
        A.      *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
        B.      *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        C.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
                1.      *The State Court Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
                2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        D.      *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

                        *        *        *        *        *


I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus.

II.     REPORT:

A.      *Procedural History*

        1.      Petitioner Kevin C. Campbell is a state prisoner, currently confined at the Hiawatha

Correctional Facility in Kincheloe, Michigan.

_____

        [1]By Order entered this date, Linda M. Metrish has been substituted as the proper
respondent in place of Jeff White.

2.       On May 16, 2003, petitioner was convicted of one count of operating a vehicle under the influence of intoxicating liquor causing death, MICH. COMP. LAWS § 257.625(4); and one count of operating a vehicle with license suspended causing death, MICH. COMP. LAWS § 257.904(4), following a jury trial in the Wayne County Circuit Court.  On June 12, 2003, he was sentenced to concurrent terms of 8-22 years' imprisonment on both convictions.

3.       Petitioner, through counsel, filed a notice of appeal in the Michigan Court of Appeals. On July 21, 2003, the trial court ordered the transcripts of petitioner's trial.  On December 17, 2003, the court reporter filed an affidavit with the court of appeals indicating that there was no record made on May 13, 2003, and that he had lost his notes for the proceedings held on May 15 and 16, 2003.  Accordingly, the only transcript filed consisted of the trial proceedings on May 14, 2003. Appellate counsel filed a motion for new trial or to settle the record in the trial court.  The trial court conducted a hearing and entered a settlement of the facts.  Petitioner subsequently filed, through counsel, his appellate brief, raising a single claim:

> THE LACK OF TRIAL TRANSCRIPTS HAS MATERIALLY PREJUDICED MR.
> CAMPBELL'S ABILITY TO ADVANCE HIS APPEAL AND HE IS THEREFORE
> ENTITLED TO A NEW TRIAL.

The court of appeals found no merit to petitioner's claim, and affirmed his conviction and sentence. *See People v. Campbell*, No. 249886, 2005 WL 1027044 (Mich. Ct. App. May 3, 2005) (per curiam).

4.       Petitioner sought leave to appeal this issue to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Campbell*, 474 Mich. 908, 705 N.W.2d 117 (2005).

5.       Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on January 31, 2006.  As grounds for the writ of habeas corpus, he raises the single claim that he raised in the state courts.

      6.      Respondent filed her answer on August 3, 2006.  She contends that petitioner's claim is without merit.

      7.      Petitioner filed a reply to respondent's answer on September 5, 2006.

B.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme

Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

C.    *Analysis*

Petitioner's sole claim in this habeas proceeding is that he was denied his right to due process on appeal when the trial court was unable to provide a complete transcript of the trial proceedings. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *The State Court Proceedings*

An analysis of petitioner's claim requires a close examination of the state court proceedings. As noted above, petitioner's trial encompassed three days: May 14-16, 2003. The transcript for May 14 is complete, and includes the opening statements of the prosecutor and defense counsel, and the direct, cross, and redirect examination of two prosecution witnesses: Frank Horan and Jessie Williams. Based on the openings statements, there was no dispute that petitioner was involved in a car accident, and that the other occupant of the vehicle in which he was traveling was killed in the accident. Further, the parties stipulated that petitioner's blood alcohol content at the hospital after the accident was either 0.17% or 0.18%. The only question was whether petitioner was driving the vehicle; the prosecution claimed he was, while petitioner claimed that he was only a passenger.

Frank Horan, an evidence technician, testified that he took photographs of the scene of the

accident. The photographs were admitted into evidence. The photographs showed that the bulk of the damage was on the passenger side of the car. *See* Jury Trial Tr., dated 5/14/03, at 107-36. Jessie Williams testified that he was on his way home from the bowling alley, traveling on Seven Mile Road by Interstate 75, when a blue Dodge Neon came from behind him traveling about 100 miles per hour. The Neon passed between his car and the curb, lost control, hit a cement block in front of a car wash, and flipped over. He later saw one of the occupants sitting on the back of the EMS truck being treated. He had no doubt that the man being treated was the driver of the car. The passenger was still in the car at that time, but did not appear to be alive. He and some others had tried to help get the driver out of the car. *See id.* at 136-58.

After petitioner filed his notice of appeal, it became apparent that the court reporter had no copy of the proceedings taken on May 15 and 16, and that he had lost his notes of the proceedings from those dates. Petitioner moved to settle the record, or alternatively for a new trial, in accordance with Rule 7.210(B)(2).[2] On July 9, 2004, the trial court heard oral argument and ordered the parties

---

[2]Rule 7.210(B)(2) provides, in its entirety:

(2) Transcript Unavailable. When a transcript of the proceedings in the trial court or tribunal cannot be obtained from the court reporter or recorder, the appellant shall file a settled statement of facts to serve as a substitute for the transcript.

(a) Within 14 days after filing the claim of appeal, the appellant shall file with the trial court or tribunal clerk, and serve on each appellee, a proposed statement of facts. The proposed statement of facts must concisely set forth the substance of the testimony, or the oral proceedings before the trial court or tribunal if no testimony was taken, in sufficient detail to inform the Court of Appeals of the nature of the controversy and of the proceedings in the trial court or tribunal.

(b) The appellant shall notice the proposed statement of facts for prompt settlement before the trial court or tribunal. An amendment or objection to the proposed statement of facts must be in writing, filed in the trial court or tribunal before the time set for settlement, and served on the appellant and any other appellee.

(c) The trial court or tribunal shall settle any controversy and certify a

to submit proposed statements of fact.  In response to this order, petitioner submitted a statement of

facts which detailed the pretrial proceedings, the testimony taken on May 14, and the sentencing

proceedings.  With respect to two days for which a transcript was not available, petitioner's

proposed statement of facts related only:

> According to court records, proceedings held on May 15, 2003 included the
> testimony of Dennis Anderson, Verdis Anderson, Martha Rademaker, Garrett
> Schaefer, Dr. Suwait Kanluan, Eric Bucy, Laron Simmons and Dawn Lecarre; while
> proceedings held on May 16, 2003 included the prosecutor's closing argument, the
> defense's closing argument, and the prosecutor's rebuttal closing argument.
>    Although there is no indication, the May 16, 2003 proceeding presumably
> also included any recorded discussions and objections concerning the putative jury
> instructions, the delivery of the jury instructions, any communication with the jury
> during deliberations, the verdict and any polling of the jury.
>    In the absence of a transcript, there is no indication regarding whatever
> potential legal errors may have occurred during these two proceedings.

Def.-Appellant's Br. on Appeal, in *People v. Campbell*, No. 249886 (Mich. Ct. App.), Appx. B, at

4-5.  In contrast, the prosecutor filed a detailed proposed statement of facts:

> 2.      Assistant Prosecuting Attorney, Augustus Hutting, assisted in review
> of the People's trial file and notes from this matter in preparing this proposed settled
> statement of facts.  Mr. Hutting did not recall any major objections or problems
> during the course of this trial.
>
> 3.      Defendant was represented by the same attorney at the trial and at the
> preliminary examination, Attorney Steven Makowski.  Attorney Makowski indicated
> to this attorney during a phone conversation on August 2, 2004 that he did not recall
> any major problems in the course of this trial.  He indicated that this was one of the
> "cleanest" trials he recalled having.  He indicated that he did not have "major
> battles" in the course of this trial with the prosecutor Augustus Hutting.  He did not

---

> statement of facts as an accurate, fair, and complete statement of the proceedings
> before it.
>    (d) The statement of facts and the certifying order must be filed with the
> trial court or tribunal clerk and a copy of the certifying order must be filed with the
> Court of Appeals.

MICH. CT. R. 7.210(B)(2).

recall problems in the course of this trial.

4.       According to the court file in this case, Dennis Anderson was the first witness the People called on May 15, 2003.

Dennis Anderson testified at the preliminary examination regarding a phone call he received from the defendant shortly after the death of his son. The defendant wanted to extend condolences and apologize. Defendant told Anderson that he was driving the car, but the accident was not his fault. Dennis Anderson's testimony at trial was consistent with the testimony at the preliminary examination. The exam testimony is attached as Appendix A and should be adopted for purposes of the statement of facts.

This attorney spoke with trial defense counsel, Steven Makowski. He did not recall having to impeach Dennis Anderson with the exam transcript.

5.       According to the court filed in this case, Verdis Anderson was the second witness the People called on May 15, 2003.

Verdis Anderson testified at the preliminary examination regarding seeing her son leave the house on the night in question with the defendant in the defendant's car. Her testimony at trial was consistent with the testimony at the preliminary examination. The exam testimony is attached as Appendix B and should be adopted for purposes of the statement of facts.

Verdis Anderson further testified that she identified the body of her son at the Wayne County Morgue.

Verdis Anderson also testified that the victim did not drive and did not have a driver's license. He would take a bus or the witness would take him where he had to go.

Verdis Anderson also testified that the defendant's mother came over to Ms. Anderson's home and told her there had been an accident and that Ms. Anderson's son was hurt worse than the defendant. Ms. Anderson recalled that the defendant called her home before the funeral and identified himself as Kevin. She recognized his voice. The defendant said, "I'm sorry." The defendant had not called since that time.

This attorney spoke with trial defense counsel, Steven Makowski. He did not recall having to impeach Verdis Anderson with the exam transcript.

6.       According to the court file in this case, Martha Rademaker was the third witness the People called on May 15, 2003.

Rademaker testimony [sic] was that she was a Detroit EMS medic on December 8, 2001 and arrived on the scene with her partner, Garrett Schafer. The police were already at the scene of the accident. The scene was a motor vehicle rollover. The vehicle was on the roof, and there was massive damage to the vehicle. Extrication was in progress. The passenger was pinned inside the car and was unconscious and unresponsive during the extrication process.

The passenger was mangled. There was an open wound to the left hand.

When the passenger was removed from the car, EMS began CPR on the patient. It continued throughout the transport. An IV was started. CPR continued while the patient was transported to the hospital. The patient's pupils were fixed and dilated.

There was another EMS unit on the scene. That unit was taking care of the other person involved in the accident, but who was walking around at the scene.

This attorney spoke with trial defense counsel, Steven Makowski. He had no recollection of his having any major problems during the testimony of any of the witnesses.

7. According to the court file in this case, Garrett Schafer was the fourth witness the People called on May 15, 2003.

Schafer was a Detroit EMS medic and his partner was Martha Rademaker. He responded, with Rademaker to the scene.

8. According to the court file in this case, Dr. Sawait Kanluen was the fifth witness the People called on May 15, 2003.

Dr. Kanluen testified that an autopsy was performed o[n] the body of Richard Lee Anderson on December 8, 2001.

The external examination showed a young black male, medium built [sic], appearing to be consistent with the stated age of 21 years old. There were multiple injuries to the body. There was a contusion of the left lung, with a laceration to the right lung. There was a laceration to [the] right lobe of the liver, right kidney, and spleen with bleeding into the abdomen. There was a fracture of the lower end of the right femur bone. There were small abrasions on the back of the left hand and over the front of the left lower leg.

The internal examination showed that the scalp, skull, and brain showed no evidence of trauma. The pelvic organs and external genitalia showed no evidence of other trauma or significant pathological changes or transections. All abdominal organs were appraised and nothing of significance was noted other than the injuries previously noted.

The blood alcohol level of the deceased was 0.21.

Attorney Steven Makowski questioned Dr. Kanluen on his summary and opinion of death in the medical examiner's report. Dr. Kanluen's report had stated, "Those injuries were sustained as a driver of a car that hit a fixed object." It was this statement Attorney Makowski called into question. Dr. Kanluen testified that he was wrong when he said the deceased had been the driver. Dr. Kanluen testified that the injuries were more consistent with the deceased victim being the passenger.

9. According to the court file in this case, Officer Eric Bucy was the sixth witness the People called on May 15, 2003.

Detroit Police Officer Eric Bucy was with his partner Officer Rodney Jones on December 8, 2001, at about 12:40 to 12:45 a.m. when they were dispatched to a fatal accident in the area of 7 Mile and Orleans. He observed a 1995 blue, Dodge Neon rolled over near the above location. There was extensive damage to the

vehicle.

Attorney Makowski did question Officer Bucy on the section of his PCR that indicated that the driver was pronounced DOA and the passenger was in temporary serious condition.

10.     According to the court file in this case, Officer LaRon Simmons was the seventh witness the People called on May 15, 2003.

Detroit Police Officer LaRon Simmons testified at the preliminary examination regarding being one of the first officers at the scene of the accident. He identified the defendant as being at the scene, and []he indicated what he did at the scene. His testimony at trial was consistent with the testimony at the preliminary examination. The exam testimony is attached as Appendix C and should be adopted for purposes of this statement of facts.

Officer Simmons further testified that the passenger was inside the vehicle and was non-responsive. There was no one in the driver's seat. The passenger's legs were in an upward position, and the head was between his legs.

Simmons testified that he talked to the defendant who smelled of alcohol. Defendant did not want to talk. When Simmons would ask a question, the defendant did not say anything.

The fire department pulled up and used the jaws of life.

This attorney spoke with trial defense counsel, Steven Makowski. He did not recall having to impeach LaRon Simmons with the exam transcript.

11.     According to the court file in this case, Officer Dawn Licari was the eighth witness the People called on May 15, 2003.

Detroit Police Officer Dawn Licari was with her partner, LaRon Simmons on December 8, 2001 [at] about 12:45 a.m. when they were dispatched to a fatal accident in the area of 7 Mile and Orleans in Detroit. Upon arrival Officer Licari observed the Fire Rescue using the "jaws of life" to get the victims out of the rolled over car. Officer Licari called for a supervisor.

One of the persons from the car was conveyed to Detroit Receiving Hospital and was DOA. The other person was in temporary serious condition.

Officer Licari testified that an officer from Sct 11-7 rode with the medics during transport to the hospital due to the defendant being hostile and intoxicated. She identified the defendant, in court, as that intoxicated person.

Attorney Makowski questioned Licari on a statement from her PCR that both the defendant and the passenger were in the car when she arrived, when her partner testified at the exam that defendant was sitting outside of the car.

12.     There was a stipulation that the defendant's blood alcohol was tested at the hospital and was 0.17 to 0.18.

13.     On May 16, 2003 the People rested their case without calling any further witnesses. The defense rested without calling any witnesses.

14. The People gave their closing argument. This attorney spoke with Attorney Steven Makowski. When asked if he recalled making any objections during closing argument, he indicated that he did not recall making any objections. Attorney Makowski told this attorney that this was one of the "cleanest" trials he recalls being involved with. He indicated that there were "no major battles" with Assistant Prosecutor Hutting.

15. Defense gave closing argument. There were no objections by the prosecution during the defense closing.

16. The jury was instructed with the standard jury instructions. Neither counsel recall any objections to the jury instructions. The jury was instructed on the count 1, operating a motor vehicle under the influence and causing death, and count 2, operating a motor vehicle with a revoked, denied, or suspended licence, causing death.

17. The envelope in the court file labeled "Juror Notes" contained only the note that the jury reached a verdict, dated and time noted by the court officer. The envelope also contained the verdict form returned. See Appendix D. There appears there were no other questions sent out by the jury.

Def.-Appellant's Br. on Appeal, in *People v. Campbell*, No. 249886 (Mich. Ct. App.), Appx. C, at 2-8, ¶¶ 2-17. Noting that she had read both the prosecutor's and petitioner's statements, and that she had presided over the trial, the trial judge concluded that "the prosecutor's statement of facts . . . is entirely accurate." Post-Conviction Mot. Tr., dated 10/1/04, at 6. The judge concluded that the prosecution and defense statements provided "a sufficient basis in which to recreate the statement of fact or the fact in this case and there is simply not justifiable reason in this Court's mind why this Court should grant Defendant's request for a new trial because the Court of Appeals will be able to review the record in its entirety based on the statement of fact provided by both parties[.]" *Id.*

Petitioner appealed to the Michigan Court of Appeals, raising only the claim that he was denied due process in connection with the appeal due to the absence of the transcripts. He did not raise any claim of error relating to the trial itself. The court of appeals explained that "[t]he inability to obtain a transcript of a criminal proceeding may so impede a defendant's constitutional right to

appeal that a new trial must be ordered," but also that "[t]he unavailability of a transcript does not automatically required the vacation of a defendant's conviction." *Campbell*, 2005 WL 1027044, at *1, slip op. at 1. Rather, the question is whether the absence of the transcript "impedes the defendant's right to appeal," and "[t]he defendant bears the burden of demonstrating prejudice resulting from missing transcripts." *Id.* As the court of appeals explained, "[w]hile demonstrating prejudice is difficult in the absence of transcripts, nevertheless, a defendant must present more than gross speculation that the transcripts were necessary to a fair appeal." *Id.* Applying this legal standard, the court of appeals rejected petitioner's claim. The court reasoned:

> We conclude that the trial court did not err by finding that the surviving record and the parties' statements of fact were sufficient to protect defendant's right to appeal. Defendant points to no facts that could support a finding that errors warranting reversal might have occurred during those proceedings for which transcripts are not available. The prosecutor's statement, prepared with the assistance of both the prosecutor who tried the case and defendant's trial counsel, gives no indication that such errors might have occurred. Defendant notes that during sentencing defense counsel objected to the scoring of the guidelines; however, his minimum terms were within the guidelines, and he does not indicate what the consequences to sentencing would have been had the trial court adopted his arguments regarding the guidelines. Defendant's bare assertion that the missing transcripts might reveal the existence of reversible error is too speculative to warrant a new trial.

*Id.*, slip op. at 2.

2. *Analysis*

The Court should conclude that the court of appeals's reasoning, set forth above, did not result in a decision which either was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

At the outset, clearly established law as determined by the Supreme Court is sparse on the issue presented here. The Supreme Court "has never held that the absence of a portion of a trial

transcript automatically entitles the defendant to a retrial." *Jackson v. Renico*, 179 Fed. Appx. 249, 252 (6th Cir. 2006). In *Griffin v. Illinois*, 351 U.S. 12 (1956), the Court held that a state violates the Equal Protection Clause if it fails to afford, at public expense, a transcript for appeal that is available to those defendants who are able to pay. *See id.* at 19. The Court subsequently recast its decision in *Griffin* as holding "that a State denies a constitutional right guaranteed by the Fourteenth Amendment if it allows all convicted defendants to have appellate review except those who cannot afford to pay for the records of their trials." *Eskridge v. Washington State Bd. of Prison Terms & Paroles*, 357 U.S. 214, 216 (1958). The Supreme Court has expanded the right recognized in *Griffin* to defendants challenging convictions for petty offenses, *see Mayer v. Chicago*, 404 U.S. 189, 195-96 (1971), and also to situations in which trial counsel may have a transcript but the defendant is represented on appeal by a different court-appointed attorney, *see Hardy v. United States*, 375 U.S. 277, 279-80 (1964).

The Court's line of cases beginning with *Griffin*, however, have also recognized some limitations on the requirement that a state provide a free transcript to indigent defendants. In *Griffin* itself, the court recognized that a state need not purchase a stenographer's transcript in every case involving an indigent defendant. *See Griffin*, 351 U.S. at 20. In *Draper v. Washington*, 372 U.S. 487 (1963), the Court reaffirmed this proposition, explaining:

> Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. A statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript.

*Id.* at 495. In *Norvell v. Illinois*, 373 U.S. 420 (1963), the Court held that "a State, in applying *Griffin v. Illinois* to situations where no transcript is available due to the death of the court reporter,

may without violation of the Due Process or Equal Protection Clause deny relief to those who, at the time of the trial, had a lawyer and who presumably had his continuing services for purposes of appeal and yet failed to pursue an appeal." *Id*. at 423 (footnote omitted). The Court further explained that "[w]hen, through no fault of the State, transcripts of criminal trials are no longer available because of the death of the court reporter, some practical accommodation must be made." *Id*. at 424. Finally, in *Mayer*, *supra*, the Court reiterated that "[a] 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript." *Mayer*, 404 U.S. at 194. Rather, a full verbatim transcript is required only "where that is necessary to assure the indigent as effective an appeal as would be available to the defendant with resources to pay his own way." *Id*. at 195. The Court suggested, however, that the defendant must make some showing of need for a complete transcript before the burden shifts to the state to show that the alternative provided is sufficient. *See id*. (emphasis added) ("*[W]here the grounds of appal . . . make out a colorable need for a complete transcript*, the burden is on the State to show that only a portion of the transcript or an 'alternative' will suffice for an effective appeal *on those grounds*.").

Apart from *Norvell*, the Supreme Court has not explicitly considered the standards to be applied when a transcript is wholly unavailable, rather than simply not provided by the state to an indigent defendant. Nevertheless, the principles set forth in the Court's *Griffin* line of cases has been extended to this situation by the courts of appeals. As the Sixth Circuit has explained, "[l]ower courts, interpreting *Griffin* and *Norvell* in the context of cases where transcripts were simply missing, have held that the [F]ourteenth [A]mendment does not require a word-by-word transcript where the production of such is impossible and the failure to produce the transcript is not invidiously motivated." *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986) (citations omitted). In such a case,

"the absence of . . . the transcripts is not a *per se* denial of [the defendant's] due process right to a fair appeal." *Id.* at 86. Rather, "in order to demonstrate denial of a fair appeal, petitioner must show prejudice resulting from the missing transcript." *Id.* While this showing is difficult and therefore need not require absolute proof of prejudice, the defendant "must present something more than gross speculation that the transcripts were requisite to a fair appeal." *Id.* The Sixth Circuit has repeatedly reaffirmed this prejudice requirement, *see Jackson*, 179 Fed. Appx. at 252; *Scott v. Elo*, 302 F.3d 598, 604-05 (6th Cir. 2002). Likewise, every other court of appeal to have considered the issue has reached the same conclusion. *See Harden v. Maxwell*, No. 00-7032, 2000 WL 1208320, at *1 (10th Cir. Aug. 25, 2000); *Robinson v. Peters*, No. 92-3973, 1994 WL 55556, at *7 (7th Cir. Feb. 23, 1996); *White v. State of Fla. Dep't of Corrections*, 939 F.2d 912, 914 (11th Cir. 1991); *Mitchell v. Wyrick*, 698 F.2d 940, 941 (8th Cir. 1983).[3]

Here, petitioner has offered nothing to show that the reconstructed record was insufficient to protect his right to a fair appeal. The trial judge reconstructed the record pursuant to an established state court procedure, and based her findings on the recollections of the prosecutor, petitioner's counsel, and herself. Neither petitioner nor his appellate counsel challenged the various assertions made by the prosecutor and trial defense counsel regarding the lack of any recollection of problems with the closing arguments, jury instructions, or evidence admitted. Likewise, petitioner has not here challenged the accuracy of the reconstructed record. In these circumstances, it was reasonable for the court of appeals to conclude that the reconstructed record was a suitable

---

[3]Although these cases involve situations in which a portion of the transcript is unavailable, the same rule applies even if the entire transcript is unavailable. *See Hattie v. Parker*, No. 91-4079, 1993 WL 196065, at *1 (6th Cir. June 9, 1993); *State v. Izaguirre*, 639 A.2d 343, 56 (N.J. Super. Ct. App. Div. 1994).

alternative to a complete transcript as contemplated by *Griffin*, *Draper*, and *Mayer*. *See, e.g.*, *Madera v. Risley*, 885 F.2d 646, 649 (9th Cir. 1989); *Karabin v. Petsock*, 758 F.2d 966, 969-70 (3d Cir. 1985). *See generally*, *Chapman v. Lafler*, No. 05-74591, 2007 WL 846618, at *6 (E.D. Mich. Mar. 16, 2007) (Edmunds J., adopting recommendation of Komives, M.J.) ("[A] reconstructed record, as opposed to a verbatim transcript, can be sufficient to accord effective appellate review to a criminal defendant, especially where state appellate rules establish a procedure for reconstruction of the trial record.").

Likewise, petitioner has failed to "make out a colorable need for a complete transcript," *Mayer*, 404 U.S. at 195, or that he was prejudiced in his ability to pursue his appeal. For the most part, petitioner does not identify any specific errors which may have occurred at his trial. In his state court brief, which is attached to the petition, petitioner noted that the missing portions of the trial included much of the evidence, closing arguments, jury instructions, and jury deliberations, and argued that "[a]ny of these segments of the trial would be the source of a potential legal challenge to be raised in his appeal." Def.-Appellant's Br., in *People v. Campbell*, No. 249886 (Mich. Ct. App.), at 10. However, this is precisely the type of speculation which is insufficient to establish prejudice from the missing transcript. Petitioner "is unable to indicate one specific error committed during the portions of the trial not included in the record," *Schwander v. Blackburn*, 750 F.2d 494, 498 (5th Cir. 1985) (internal quotation omitted), and neither trial counsel nor the prosecutor nor the trial judge could recall any significant objections to the testimony, or any problems with the closing arguments or jury instructions.

Petitioner does point to three specific claims which he asserts demonstrate prejudice. However, petitioner was not prejudiced in his ability to pursue these claims by the absence of

transcript. In his state court brief, petitioner argued that a complete transcript may have supported a challenge to the sufficiency of the evidence because it appeared that two witnesses identified him as the passenger rather than the driver. Even if this is a correct characterization of the witnesses' testimony,[4] a transcript of this testimony would not have assisted in petitioner's sufficiency of the evidence claim. In a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original), and reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution, *see Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992).[5] In petitioner's case Jessie Williams, whose testimony was transcribed, testified unequivocally that petitioner was driving the victim. Further, evidence technician Frank Horan, whose testimony was likewise transcribed, authenticated photographs taken of the car showing that the bulk of the damage was on the passenger side, providing circumstantial evidence that the passenger would likely have suffered the most serious injuries. This evidence alone, viewed in the light most favorable to the prosecution, provides sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that

---

[4]As evidenced by the reconstructed record, no witness actually testified that petitioner was not the driver. Rather, Dr. Kanluen was impeached with his autopsy report in which he stated that the victim was killed while driving the vehicle, and Officer Bucy was impeached with his incident report in which he identified petitioner as the passenger who was injured. As the attorneys and court recalled the matter, however, both disavowed these conclusions at trial.

[5]This constitutional standard is, of course, the same standard applied by the Michigan appellate courts on direct review. *See People v. Wright*, 477 Mich. 1121, 1122, 730 N.W.2d 720, 721 (2007) (per curiam); *People v. Wolfe*, 440 Mich. 508, 513-15, 489 N.W.2d 748, 750-51 (1992).

petitioner was the driver.[6]  The fact that other testimony in the record might have contradicted this conclusion would not have provided a basis for appellate reversal of petitioner's conviction.  A reviewing court, whether on direct appeal or habeas review, "do[es] not make credibility determinations in evaluating the sufficiency of the evidence."  *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *Walker v. Russell*, 57 F.2d 472, 475-76 (6th Cir. 1995); *see also*, *United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").  "The fact that the testimony is contradictory does not mean that evidence is insufficient, only that the jury must make credibility determinations."  *Government of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995).  It is the job of the jury, not a reviewing court, to resolve conflicts in the evidence, and a reviewing court must presume that the jury resolved those conflicts in favor of the prosecution.  *See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996); *Wolfe*, 440 Mich. at 514-15, 489 N.W.2d at 751.  Thus, even if some witnesses in fact testified that petitioner was not the driver, this testimony would have done nothing to undermine the conclusion that there was sufficient evidence presented for the jury to conclude that petitioner was the driver.[7]

---

[6]To establish the elements of operating under the influence of liquor causing death the prosecution must prove: (1) defendant operated a motor vehicle while intoxicated; (2) defendant voluntarily decided to drive knowing he had consumed an intoxicating agent; and (3) defendant's operation of the vehicle caused the victim's death.  *See People v. Schaefer*, 473 Mich. 418, 434, 703 N.W.2d 774, 784 (2005).  The elements of driving with a suspended licence causing death are the same, except that the defendant must have operated the vehicle while his license was suspended, rather than while intoxicated.  *Cf. id.* at 433 n.46, 703 N.W.2d at 783 n.46.  As evidenced by the reconstructed record–and petitioner does not here contend otherwise–the only element in dispute was whether petitioner was the driver.

[7]Petitioner does not explicitly contend that the missing testimony could have provided a claim that the verdict was against the great weight of the evidence under Michigan law, as

In his reply, petitioner also contends that he is actually innocent of the charge and that "[h]e cannot adjudicate his claim of innocence without the transcripts from the trial." Pet'r's Reply Br., at 4. However, while a defendant may challenge the sufficiency of the evidence supporting his conviction, a reviewing court does not sit to retry cases, and thus a claim of innocence standing alone does not provide a basis for appellate or habeas relief. *See Herrera v. Collins*, 506 U.S. 390, 400, 404 (1993); *People v. King*, No. 271163, 2007 WL 3085484, at *5 (Mich. Ct. App. Oct. 23, 2007) (per curiam); *cf. People v. Peters*, 449 Mich. 515, 519, 537 N.W.2d 160, 162 (1995). Further, to the extent petitioner bases his request for habeas relief on his inability to pursue an innocence claim–or any other claim for that matter–in this Court, his claim fails because there is "no constitutional right to a transcript to prepare for a post-conviction proceeding." *Hays v. Newsom*, 3 Fed. Appx. 270, 271 (6th Cir. 2001) (citing *United States v. MacCollom*, 426 U.S. 317, 325-26 (1976) (plurality); *Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992)).

Finally, petitioner suggests that the sentencing proceeding supports his claim. From his state court brief and his reply brief in this Court, it is not entirely clear whether petitioner is arguing that there were errors in the sentencing proceeding itself that he was unable to pursue, or that the sentencing transcript reveals that appealable errors did in fact occur at his trial. With respect to the

---

opposed to a constitutionally based sufficiency of the evidence claim. Horan's and Williams's testimony, however, would likewise have compelled rejection of any such claim. As the Michigan Supreme Court has explained, "a new trial based upon the weight of the evidence should be granted only when the evidence preponderates heavily against the verdict[.]" *People v. Lemmon*, 456 Mich. 625, 642, 576 N.W.2d 129, 137 (1998) (internal quotation omitted). However, as with a sufficiency claim, conflicting testimony and questions of credibility are not sufficient grounds for granting a new trial, and a jury's credibility determinations may be overcome only in exceptional circumstances, such as where the testimony contradicts indisputable physical laws, is patently incredible, or so inherently implausible that it could not have been believed. *See id.* at 642-44, 576 N.W.2d 137.

sentencing proceeding itself, petitioner has offered no argument as to why the transcript of the sentencing proceeding is insufficient to raise any sentencing claims that he may have had. The colloquy between the judge, prosecutor, and defense counsel reveals no dispute as to the facts bearing on petitioner's sentence that were adduced at trial, but rather on the legal effect of the undisputed facts under the sentencing guidelines. *See* Sentence Tr., at 4-6, 9-10. There was a question brought up by petitioner's counsel as to whether the offense variable relating to psychological injury to a member of the victim's family was properly scored due to the absence of any such testimony at trial, however the court heard from the victim's father at sentencing, and thus there was sufficient factual support for this scoring. *See id*. at 6-9. And, in any event, petitioner's counsel recognized that the scoring of this offense variable would not affect petitioner's offense level. *See id*. at 6.

With respect to petitioner's argument that the sentencing transcript provides support for the claim that there were errors at trial, a review of the transcript refutes this claim. At no point during the sentencing proceeding does any one–the judge, prosecutor, defense counsel, or petitioner himself–speak of any errors or omissions during the trial. The only mention of the trial at all is with respect to whether there was any evidence of psychological harm to the victim's family at trial, a deficiency corrected at the sentencing hearing. Thus, the sentencing transcript does not support an inference that any appealable errors occurred at trial.

In short, the trial judge recreated the record pursuant to an established state procedure, with the assistance of the prosecutor, trial defense counsel, and her own recollection. The recreated record does not suggest the existence of any appealable issues, and petitioner has neither called into question the accuracy of the recreated record nor identified any specific errors that might have

occurred at trial. The claims that petitioner does assert could have been supported by a verbatim transcript are resolvable on the basis of the existing transcript of the first day of trial, regardless of what evidence would have been contained in the transcripts for the other two days. In these circumstances, it cannot be said that the Michigan Court of Appeals's determination was an unreasonable application of the clearly established federal law set forth in the *Griffin* line of cases.

D.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing

party may file a response.  The response shall be not more than five (5) pages in length unless by

motion and order such page limit is extended by the Court.  The response shall address specifically,

and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 12/21/07


| The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on December 21, 2007.  s/Eddrey Butts Case Manager |
| --- |